James L. Dawson (SBN 73521)
Marc A. Eisenhart (SBN 188518)
Joshua J. Borger (SBN 231951)
GATES EISENHART DAWSON
125 S. Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 288-8100
Facsimile: (408) 288-9409
Email: jld@gedlaw.com; mae@gedlaw.com; jjb@gedlaw.com

Attorneys for Plaintiff Alison Yew Abdel-shafy

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISON YEW ABDEL-SHAFY, | CASE No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND STATUTORY PENALTIES FOR VIOLATION OF CIVIL RIGHTS** |
| v. | |
| THE CITY OF SAN JOSE; THE SAN JOSE POLICE DEPARTMENT; SAN JOSE POLICE OFFICER JUAN GARCIA; SAN JOSE POLICE OFFICER DANIEL AKERY; and SAN JOSE POLICE OFFICER SIMRATPAL BRAR, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Alison Yew Abdel-Shafy (hereinafter "Yew"), hereby demands a trial by jury on all claims set forth herein, and alleges as follows:

## JURISDICTION

1.      This Court has jurisdiction over the federal causes of action pursuant to 28 U.S.C. §1331 and §1343, because this action arises under 42 U.S.C. §1983. This Court has supplemental jurisdiction over the State causes of action pursuant to 28 U.S.C. §1367. Venue is

1  proper in this judicial district because the events giving rise to the claims occurred within the

2  district.

## INTRADISTRICT ASSIGNMENT

4  2.  The events giving rise to the claims occurred within San Jose, California.

5  Therefore, this case should be assigned to the San Jose division.

## PARTIES

7  3.  Plaintiff Alison Yew Abdel-shafy is an individual residing in the County of Santa

8  Clara, State of California.

9  4.  Defendant, the City of San Jose, is a municipal corporation located in the County

10  of Santa Clara, State of California.  The City of San Jose maintains a police department, which

11  acts as the City's agent in the area of law enforcement.

12  5.  Defendant, the San Jose Police Department, is an agency of the City of San Jose

13  which has law enforcement as its primary responsibility.

14  6.  Defendant Juan Garcia is employed as a police officer by the City of San Jose,

15  and at all times relevant to the incident described in this complaint was acting in the course and

16  scope of that employment and was acting under color of law.

17  7.  Defendant Daniel Akery is employed as a police officer by the City of San Jose,

18  and at all times relevant to the incident described in this complaint was acting in the course and

19  scope of that employment and was acting under color of law.

20  8.  Defendant Simratpal Brar is employed as a police officer by the City of San Jose,

21  and at all times relevant to the incident described in this complaint was acting in the course and

22  scope of that employment and was acting under color of law.

23  9.  Each of the parties referred to as a defendant was acting as the agent, servant and

24  employee of the remaining such defendants and was acting within the course and scope of such

25  agency and employment, with the knowledge, permission, and consent of each other and of the

26  remaining defendants, and for the benefit of all or one or more of those parties referred to as

27  defendants.

28

10.     Yew is informed and believes that when the Defendants perpetrated all or some of the acts, conduct and/or omissions alleged herein, each of them individually, or through their authorized agents, servants, employees, or both, knew of such acts, conduct and omissions, and/or knowingly acquiesced in, and/or aided and abetted, and/or knowingly accepted the benefits of the same.  Yew, therefore, is informed and believes that, by reason of the foregoing, the Defendants are jointly and severally liable to Yew for such damages suffered as alleged herein.

## FACTS

11.     On the morning of January 2, 2017, Yew drove onto the parking lot at 1759 Technology Dr., San Jose, California and witnessed Esam Giendi (hereinafter "Giendi") standing next to a large black SUV and arguing with a security staff over whether Giendi could park his vehicle there because he was on private property. While the security guard spoke professionally, Giendi insisted on yelling at the guard at close proximity that it was public property and he could do what he wanted.

12.     Yew parked her car nearby the two men and while walking past them and toward the Starbucks on the property, Yew could hear Giendi yelling at the security guard.  Witnessing Giendi's abusive behavior towards the security guard, Yew agreed that it was private property. Yew continued to walk towards the Starbucks located at that address.  Yew sat outside the Starbucks after having received a phone call from someone.

13.     Giendi then walked to the Starbucks.  Giendi yelled profanity at Yew as he passed her and walked into the Starbucks.  While Giendi was inside Starbucks, Yew received a phone call from her husband and was speaking to him when Giendi walked out of the Starbucks, at which time Giendi continued to yell profanity at Yew. Having heard someone abusively speaking to his wife, Yew's husband, Yousry Abdel-shafy (hereinafter "Yousry"), who was driving nearby, came by.

14.     Yousry arrived shortly thereafter.  Neither Yew nor Yousry saw Giendi, although his car was still parked.  Yousry took a picture of Giendi's car.  Yew and Yousry were then standing in front of the Starbucks.  Giendi then ran up to them, started yelling at them, and took

3

1    pictures of both Yousry and Yousry's car.  Yousry and Giendi began arguing and then walked

2    away together, out of sight of Yew.

3         15.   Yew then went inside the Starbucks.  The officer defendants Garcia and Akery

4    walked into the Starbucks with Giendi, who identified Yew.  Yew was sitting with another

5    individual.  The officer defendants Garcia and Akery asked Yew who the person was who had

6    argued with Giendi and Yew said that it was a friend but refused to provide the person's name.

7    She asked the officer defendants Garcia and Akery if she had to identify the person and the

8    officer defendants Garcia and Akery stated that she did not have to provide the friend's name,

9    but she did have to provide her own name and identifying information for the police report.

10   Yew informed the officer defendants Garcia and Akery that she would go to the police station

11   and give her statement about the incident after her meeting.  The officer defendants Garcia and

12   Akery insisted that she provide her name and identify information immediately.  The officer

13   defendants Garcia and Akery informed Yew that they would arrest her for delaying an officer if

14   she did not provide the information.  When Yew refused to provide the information again, the

15   officer defendants Garcia and Akery dragged her off of her seat and handcuffed her.  Then,

16   without Yew's permission, the officer defendants went through Yew's bag, found her wallet,

17   opened the wallet, and pulled out Yew's California Driver's License. At that point the officer

18   defendants surmised that Yew and Yousry were related and Yew so confirmed. Yew asked if she

19   could be released now that the officer defendants had her identification, and the officer

20   defendants said it was too late and that Yew had to be jailed for five hours.

21        16.   Upon information and belief, officer defendant Brar transported Yew to the Santa

22   Clara County main jail, and booked her.  Yew was charged with delaying an arrest in violation

23   of Section 148(a)(1) of the Penal Code.

24        17.   The sole reason for Yew's arrest was her refusal to provide to the police officers

25   her own name and identification for the police report.  Yew was not arrested because she was a

26   suspect in any alleged wrongdoing.  She was not arrested for failing to provide her identifying

27   information in response to a *Terry* stop.

28

18.     Yew's arrest was unlawful because it is clearly established law that the failure to identify oneself cannot, on its own, justify an arrest.

19.     Upon information and belief, Yew was deprived of her civil rights, in part, due to the City of San Jose's and the San Jose Police Department's failure to train the officers.  Upon further information and belief, the City of San Jose's and the San Jose Police Department's training program was not adequate to train their officers.  Defendants Garcia, Akery, and Brar violated Yew's right to be free from an unlawful arrest following her refusal to provide identifying information.  That failure to provide adequate training was a cause of the deprivation of Yew's right to be free from an unlawful arrest following her refusal to provide identifying information.

20.     As a direct and proximate result of the conduct of the Defendants, and each of them, Yew has suffered physical injuries, injury to her reputation, humiliation, anxiety, and mental anguish and emotional distress.

## THE CITY'S REJECTION OF YEW'S GOVERNMENT TORT CLAIM

21.     On June 30, 2017, before filing this lawsuit and pursuant to the requirements of Government Code §810, *et seq.*, Yew filed a claim with the City of San Jose, notifying the City of Yew's complaints relating to the violation of his civil rights and requesting appropriate remedies for the violations.

22.     Upon receiving the claim, the City could have done any of the following things: (1) reject the claim; (2) allow the claim; (3) allow the claim in part and reject it in part; or (4) compromise the claim.

23.     On August 4, 2017, the City of San Jose served a notice stating "the claim which you presented to the City Clerk of the City of San Jose on 6/30/2017, was rejected by the City of San Jose."

## INCORPORATION OF PRELIMINARY ALLEGATIONS

24.     Unless the context clearly indicates otherwise, the preliminary allegations contained in paragraphs 1 through 23, inclusive, shall be deemed to be incorporated herein by

1 | reference, as though fully set forth at length in each and every cause of action set forth in this
2 | complaint.

3

4 | **FIRST COUNT**
5 | **Action for Violation of Civil Rights Pursuant to Civil Code §52.1 Against All Defendants**
6 | **(Bane Act)**
7 | 25.   The Defendants acted violently against Yew in retaliation for her exercising her
8 | right not to provide her identifying information to the Defendants.
9 | 26.   Yew was harmed by the Defendants' conduct.
10 | 27.   The Defendants' conduct was a substantial factor in causing Yew's harm.

11

12 | **SECOND COUNT**
13 | **Action for Violation of Civil Rights Pursuant to 42 U.S.C. §1983 Against All**
14 | **Defendants**
15 | **(Excessive Use of Force)**
16 | 28.   The Defendants used excessive force in arresting Yew.
17 | 29.   The Defendants were acting or purporting to act in the performance of their
18 | official duties.
19 | 30.   Yew was harmed.
20 | 31.   The Defendants' use of excessive force was a substantial factor in causing Yew's
21 | harm.

22

23 | **THIRD COUNT**
24 | **Action for Violation of Civil Rights Pursuant to 42 U.S.C. §1983 Against All**
25 | **Defendants**
26 | **(Fourth Amendment)**
27 | 32.   The Defendants illegally arrested Yew for refusing to provide her identifying
28 | information.

33.   The Defendants were acting or purporting to act in the performance of their official duties.

34.   Yew was harmed because of her unlawful arrest.

## FOURTH COUNT

### Assault Against All Defendants

35.   The Defendants acted, intending to cause harmful contact.

36.   Yew reasonably believed that she was about to be touched in a harmful manner.

37.   Yew did not consent to Defendants' conduct.

38.   Yew was harmed.

39.   The Defendants' conduct was a substantial factor in causing Yew's harm.

## FIFTH COUNT

### Battery Against All Defendants

40.   The Defendants touched Yew and/or caused Yew to be touched with the intent to harm or offend her.

41.   Yew did not consent to the touching.

42.   Yew was harmed and/or offended by the Defendants' conduct.

43.   A reasonable person in Yew's situation would have been offended by the touching.

## SIXTH COUNT

### Intentional Infliction of Emotional Distress Against All Defendants

44.   The Defendants' conduct was outrageous.

45.   The Defendants intended to cause Yew's emotional distress and/or Defendants acted with reckless disregard of the probability that Yew would suffer emotional distress.

46.   Yew suffered severe emotional distress.

47.     The Defendants' conduct was a substantial factor in causing Yew's severe emotional distress.

## SEVENTH COUNT

### Negligent Infliction of Emotional Distress Against All Defendants

48.     The Defendants were negligent.

49.     Yew suffered serious emotional distress.

50.     The Defendants' negligence was a substantial factor in causing Yew's serious emotional distress.

## EIGHTH COUNT

### Negligence Against All Defendants

51.     The Defendants were negligent.

52.     Yew was harmed.

53.     The Defendants' negligence was a substantial factor in causing Yew's harm.

## NINTH COUNT

### False Imprisonment/False Arrest Against All Defendants

54.     Yew was wrongfully arrested without a warrant.

55.     Yew was actually harmed.

56.     The Defendants' conduct was a substantial factor in causing Yew's harm.

## TENTH COUNT

### Action for Violation of Civil Rights Pursuant to 42 U.S.C. §1983 Against All Defendants

### (First Amendment)

57.     Yew had a right under the First Amendment to the United States Constitution not to provide her identifying information.  The Defendants violated her First Amendment right by arresting her for failing to provide this information.

1        58.    The Defendants were acting or purporting to act in the performance of their

2   official duties.

3        59.    Yew was harmed because of her unlawful arrest.

## PRAYER AND RELIEF REQUESTED

WHEREFORE, Plaintiff prays for relief as follows:

1. For general, special, and compensatory damages according to proof;

2. For statutory penalties;

3. For an award of punitive damages;

4. For an award of reasonable attorney's fees;

5. For costs of suit;

6. For prejudgment interest;

7. For all such further relief as the Court deems just and proper.

Plaintiff demands a jury trial.

Dated:  December 27, 2017                   GATES EISENHART DAWSON

                                          Joshua J. Borger
                                          Attorney for Plaintiff