UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| ALISON YEW ABDEL-SHAFY,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No. 17-CV-07323-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 45 |

Plaintiff Alison Yew Abdel-Shafy ("Plaintiff") brings suit against Defendants City of San Jose, San Jose Police Department, San Jose Police Officer Juan Garcia, and San Jose Police Officer Daniel Akery (collectively, "Defendants"). Before the Court is Defendants' motion to dismiss Plaintiff's Complaint. ECF No. 45 ("Mot."). Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS the motion to dismiss the federal claims with prejudice and state claims without prejudice. Plaintiff may refile her state law claims in state court.

## I. BACKGROUND

### A. Factual Background

On the morning of January 2, 2017, Plaintiff drove into a parking lot located at 1759 Technology Drive, San Jose, California. ECF No. 42 at ¶ 10 (First Amended Complaint, hereinafter abbreviated for citation purposes as "FAC"). Plaintiff there observed Esam Giendi ("Giendi") standing next to a black SUV and arguing with a security guard about whether or not Giendi could park there. *Id.* The security guard stated the area was private property, whereas Giendi insisted it was public parking. *Id.* Plaintiff parked her car nearby, exited, and began walking towards a nearby Starbucks. *Id.* at ¶ 11. While passing the argument, Plaintiff interjected and agreed with the security guard that the area at issue was private property *Id.*

Plaintiff then kept walking towards the Starbucks, where she remained outside after receiving a phone call. *Id.* Giendi then walked into the Starbucks and yelled profanity at Plaintiff as Giendi passed. *Id.* at ¶ 12. While Giendi was inside the Starbucks, Plaintiff received a phone call from her husband, Yousry Abdel-Shafy ("Yousry"). *Id.* While Plaintiff was on the phone with Yousry, Giendi exited the Starbucks and again yelled profanity at Plaintiff. Yousry heard this over the phone and drove to the Starbucks. *Id.*

Yousry arrived shortly thereafter. *Id.* at ¶ 13. Yousry and Plaintiff did not see Giendi, though his car was still parked nearby. *Id.* Yousry took a photo of Giendi's car, and then Plaintiff and Yousry stood in front of Starbucks. *Id.* At this point, "Giendi then ran up to them, started yelling at them, and took pictures of both Yousry and Yousry's car. Yousry and Giendi began arguing and then walked away together, out of sight of [Plaintiff]." *Id.*

Plaintiff then went inside the Starbucks. *Id.* at ¶ 14. San Jose Police Officers Juan Garcia ("Garcia") and Daniel Akery ("Akery") (collectively, "Officers") subsequently entered the Starbucks with Giendi. *Id.* Giendi identified Plaintiff, who was sitting with the unidentified person who had argued with Giendi, *i.e.* Yousry. *Id.* Plaintiff told the Officers that the other person "was a friend" but refused to provide the person's name. *Id.* Plaintiff then asked the Officers if she was required to identify the individual. *Id.* The Officers told Plaintiff that she was not required to provide the individual's name, but that Plaintiff was required to "provide her own name and

identifying information for the police report." *Id.*

Plaintiff refused to provide her name and identifying information. *Id.* Instead, Plaintiff told the Officers that she would "go to the police station and give her statement about the incident after her meeting." *Id.* The Officers told Plaintiff she needed to provide her name and identifying information immediately, and that Plaintiff would be arrested for delaying an officer if she did not do so. *Id.* Plaintiff again refused to provide her name and identifying information. *Id.* In total, according to the police report, Plaintiff was asked approximately 5 times to provide identification, and refused each time. *Id.* at ¶ 17. Plaintiff's first amended complaint quotes from Officer Akery's account in the police report of Plaintiff's refusal to provide her identification or that of Plaintiff's claimed "friend" as follows:

> When we approached (S) Alison she stated that she called a friend and would not give us his information, we told her that was fine but we needed hers for the report. We asked (S) Alison approximately 5 times for her identification and she refused, I told her that she would be arrested for impeding an investigation and she stated that she knew her rights and still refused.

*Id.* Plaintiff's first amended complaint further quotes Officer Akery regarding Giendi's allegation that Giendi was assaulted by Yousry:

> (S) Alison stated she got into an argument with [Giendi] and then called a friend. I asked her who was the friend and she did not want to say. I told her that was fine but I needed her [i]dentification for the [police] report. She stated that she did not have to give it to me. I told (S) Alison that [Giendi] was assaulted and [Giendi] wanted a report and I needed her information and she can be on her way. (S) Alison refused to give us her information and stated that she knew her rights and didn't have to get it to us. Officer Garcia and I gave (S) Alison several chances (approximately 5) asking for her identification and she refused all times. I told (S) Alison to stand up and I arrested her for 148PC.

*Id.* at ¶ 18.[1] The Officers therefore "dragged [Plaintiff] off her seat and handcuffed her." *Id.* at ¶ 14. The Officers then went through Plaintiff's bag, removed her wallet, opened it, and pulled out Plaintiff's driver's license. *Id.* After the Officers obtained Plaintiff's identification, Plaintiff confirmed that Yousry, whom Plaintiff had identified as her "friend," and Plaintiff were in fact

---

[1] According to the police report, Yousry hit Giendi in the groin and punched Giendi in the mouth, then left the scene. ECF No. 45-1 at 18.

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS
WITHOUT PREJUDICE

related. *Id.* at ¶ 14. Yousry told the officers that Plaintiff was his wife. ECF No. 45-1 at 15.

Plaintiff was then transported to the Santa Clara County Jail and booked. FAC at ¶ 15. Plaintiff was charged with violating California Penal Code § 148(a)(1), which prohibits "willfully resist[ing], delay[ing], or obstruct[ing] any public officer, peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." The first amended complaint alleges that the sole reason Plaintiff was arrested was "her refusal to provide to the police officers her own name and identification for the police report. [Plaintiff] was not arrested because she was a suspect in any alleged wrongdoing." *Id.* at ¶ 16. The first amended complaint alleges that Plaintiff's experience caused her "physical injuries, injury to her reputation, humiliation, anxiety, and mental anguish and emotional distress." *Id.* at ¶ 22.

### B. Procedural History

On June 30, 2017, Plaintiff filed a claim with the City of San Jose which notified the City of San Jose of Plaintiff's complaints relating to the incident described above. *Id.* at ¶ 23. The City of San Jose rejected Plaintiff's claim on August 4, 2017. *Id.* at ¶ 25.

On December 27, 2017, Plaintiff filed her complaint in federal court. ECF No. 1. Plaintiff brought a total of 10 Counts. Plaintiff brought three federal claims under 42 U.S.C. § 1983 for unlawful arrest based on the Fourth Amendment (Count 3), unlawful arrest based on the First Amendment (Count 10), and for excessive force based on the Fourth Amendment (Count 2). *Id.* at ¶¶ 28-34, 57-59. Second, Plaintiff brought seven state law causes of action for violation of California Civil Code § 52.1 (Count 1), assault (Count 4), battery (Count 5), intentional infliction of emotional distress (Count 6), negligent infliction of emotional distress (Count 7), negligence (Count 8), and false imprisonment (Count 9). *Id.* at ¶¶ 25-27, 35-56. Plaintiff brought all 10 Counts against the Officers as well as Officer Simratpal Brar (who transported Plaintiff to the Santa Clara County jail and booked her), the City of San Jose, and the San Jose Police Department. *Id.* at ¶¶ 16, 25-59.

On March 21, 2018, Defendants filed a motion to dismiss. ECF No. 25. On September 25,

2018, the Court granted Defendants' motion to dismiss without prejudice on multiple grounds. ECF No. 39. First, the Court granted the motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim for unlawful arrest under the Fourth Amendment because the Court found that Plaintiff was subject to a lawful *Terry* stop when she refused to identify herself and that the Officers' request for identification was reasonably related to the circumstances justifying the *Terry* stop. *Id.* at 11. Second, the Court rejected Plaintiff's argument that she had a First Amendment right to refuse to identify herself during a *Terry* stop because the Officers were entitled to qualified immunity as to Plaintiff's First Amendment claim for unlawful arrest because the law was not clearly established. *Id.* at 14. Third, the Court rejected Plaintiff's Fourth Amendment excessive force claim because Plaintiff's mere allegation that she was "dragged off of her seat and handcuffed," FAC at ¶ 14, was insufficient to state a claim for excessive force, ECF No. 39 at 15-16. Fourth, the Court denied Plaintiff's *Monell* claim for municipal liability because the Court did not find underlying violations of Plaintiff's constitutional rights, and because the complaint failed to mention the City of San Jose or any failure to train the Officers. *Id.* at 17-19. Fifth, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims because there were no more live federal causes of action. *Id.* at 19-20. In dismissing Plaintiff's claims, the Court stated that "failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories." *Id.* at 20.

On October 16, 2018, Plaintiff filed her first amended complaint. ECF No. 42. The first amended complaint is almost identical to Plaintiff's complaint. Plaintiff merely added three block quotes from the police report of the dispute at issue to her first amended complaint. *See* FAC at ¶¶ 17-19. The first amended complaint also dropped any mention of Officer Simratpal Brar, whom Plaintiff had sued in her original complaint, as a Defendant. Thus, the Court proceeds under the assumption that Plaintiff is no longer suing Officer Brar. Moreover, the first amended complaint dropped any federal claims against the City of San Jose or the San Jose Police Department. As it currently stands, Plaintiff brings three federal claims under 42 U.S.C. § 1983 against the Officers

5

for unlawful arrest based on the Fourth Amendment (Count 3), unlawful arrest based on the First Amendment (Count 10), and for excessive force based on the Fourth Amendment (Count 2). In addition, Plaintiff brings seven state law causes of action against the Officers, the City of San Jose, and the San Jose Police Department for violation of California Civil Code § 52.1 (Count 1), assault (Count 4), battery (Count 5), intentional infliction of emotional distress (Count 6), negligent infliction of emotional distress (Count 7), negligence (Count 8), and false imprisonment (Count 9).

On October 30, 2018, Defendants filed their motion to dismiss Plaintiff's first amended complaint. ECF No. 45. On November 13, 2018, Plaintiff opposed the motion. ECF No. 46 ("Opp."). On November 19, 2018, Defendants filed their reply. ECF No. 47 ("Reply").

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS WITHOUT PREJUDICE

noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.    DISCUSSION

Although Plaintiff's first amended complaint brings ten causes of action against Defendants in her first amended complaint, they break down into two major categories. First, Plaintiff brings three federal claims under 42 U.S.C. § 1983 against the Officers for unlawful arrest based on the Fourth Amendment (Count 3), unlawful arrest based on the First Amendment

7

(Count 10), and for excessive force based on the Fourth Amendment (Count 2). Second, Plaintiff brings seven state law causes of action against the Officers, the City of San Jose, and the San Jose Police Department for violation of California Civil Code § 52.1 (Count 1), assault (Count 4), battery (Count 5), intentional infliction of emotional distress (Count 6), negligent infliction of emotional distress (Count 7), negligence (Count 8), and false imprisonment (Count 9).

The Court addresses each of Plaintiff's § 1983 claims in turn. The Court finds that Plaintiff has still failed to allege facts showing that her arrest violated her Fourth Amendment rights. The Court then finds that even assuming *arguendo* that the arrest violated Plaintiff's First Amendment rights, Officers Juan Garcia and Daniel Akery are nonetheless entitled to qualified immunity. The Court next examines Plaintiff's excessive force cause of action, and finds that Plaintiff has continued to fail to allege facts showing a violation of Plaintiff's Fourth Amendment rights. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action.

### A. Fourth Amendment Unlawful Arrest

Plaintiff's primary federal cause of action is for unlawful arrest in violation of the Fourth Amendment. FAC at ¶¶ 34-36, 59. The factual underpinning for this claim is Plaintiff's allegation that the Officers arrested Plaintiff because she refused to provide them with "her own name and identifying information for the police report." *Id.* at ¶ 14. Defendants agree that Plaintiff's refusal to identify herself was the precipitating cause of her arrest, but Defendants deny that this violated Plaintiff's Fourth Amendment rights. Defendants contend that Plaintiff was being held pursuant to a *Terry* stop, and that the Officers were therefore allowed to arrest her for refusing to identify herself pursuant to *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt Cty.*, 542 U.S. 177 (2004).

Plaintiff denies that the Officers were holding her pursuant to a *Terry* stop. Plaintiff argues from this premise that the Officers violated her constitutional rights by arresting her based on her refusal to identify herself. The parties' *Terry* stop dispute is dispositive here. If Plaintiff was

United States District Court
Northern District of California

subject to a *Terry* stop when she refused to identify herself, *Hiibel* means the Officers did not violate Plaintiff's Fourth Amendment rights by arresting her pursuant to state law. The Court finds that even considering the minimal changes Plaintiff made to her complaint, mostly consisting of the insertion of quotes from the Officers' police reports, Plaintiff was subject to a *Terry* stop when she refused to identify herself. The Officers therefore did not violate Plaintiff's Fourth Amendment rights by arresting her.

*Terry v. Ohio*, 392 U.S. 1 (1968), permits "limited police intrusions on a person's freedom of movement and personal security when an officer's suspicion falls short of the 'probable cause' required to execute an arrest or a 'full' search." *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016). "To initiate a brief stop to investigate potential criminal activity, a stop that does not rise to the level of an arrest, an officer must have reasonable suspicion to believe 'criminal activity may be afoot.'" *Id.* (quoting *Terry*, 392 U.S. at 30). This is "not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). While "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.*

*Hiibel* established that the Fourth Amendment does not prohibit arrests of suspects under state law for refusing to identify himself or herself during a *Terry* stop. *Hiibel*, 542 U.S. at 187-91. The defendant in *Hiibel* was subjected to a *Terry* stop, refused to identify himself, and was then arrested pursuant to Nevada's "stop and identify" statute. *Id.* at 181-82. *Hiibel* rejected the defendant's Fourth and Fifth Amendment challenges to his arrest. The United States Supreme Court found that "[t]he principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop." *Id.* at 187. *Hiibel* qualified this holding by adding that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Id.* at 188. Subsequent Ninth Circuit and district court decisions have reaffirmed *Hiibel*'s holding. *See United States v. Lopez*, 482 F.3d

United States District Court
Northern District of California

1067, 1078 n.13 (9th Cir. 2007) ("Apart from disclosing one's identity, *see Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 187-89 (2004), a person detained by police has no general obligation to answer questions or volunteer information."); *Nakamura v. City of Hermosa Beach*, 2009 WL 1445400, at *8 (C.D. Cal. May 20, 2009), *aff'd*, 372 F. App'x 787 (9th Cir. 2010) ("In *Hiibel*, the Supreme Court held that the arrest of a suspect during an investigatory stop for refusing to identify himself, a violation of Nevada state law, did not offend the Constitution."); *King v. City of San Mateo*, 2018 WL 587147, at *5 (N.D. Cal. Jan. 29, 2018) (finding that, in light of *Hiibel*, a § 1983 plaintiff could "not maintain a Fourth Amendment claim solely based on Barker's [the officer's] demands that he identify himself.").

Plaintiff's Fourth Amendment unlawful arrest claim therefore turns on two questions. First, was Plaintiff subject to a *Terry* stop when she refused to identify herself? In particular, did the Officers "have reasonable suspicion to believe 'criminal activity may be afoot[?]'" *Dillard*, 818 F.3d at 874 (quoting *Terry*, 392 U.S. at 30). Second, was the Officers' request that Plaintiff identify herself reasonably related to the circumstances that justified the *Terry* stop? *Hiibel*, 542 U.S. at 188. The Court finds that the answer to both questions is "yes."

### 1. Was Plaintiff Subject to a *Terry* Stop?

The Court construes the first amended complaint in Plaintiff's favor. *Manzarek*, 519 F.3d at 1031. Even so, it is clear that Plaintiff was subject to a *Terry* stop when she was arrested. To start, although Plaintiff denies that a *Terry* stop occurred, Plaintiff does not dispute that the Officers were investigating a crime based on the altercation. Thus, the Officers had reasonable suspicion to believe that "criminal activity may be afoot" and that Plaintiff was therefore subject to a *Terry* stop. *Terry*, 392 U.S. at 30.

Here, the escalating altercation between Plaintiff, Yousry, and Giendi; Giendi's claim that Yousry assaulted Giendi; the Officers' arrival with Giendi at the Starbucks; Giendi's identification of Plaintiff; the Officers' statement to Plaintiff that they needed Plaintiff's identification "for the police report"; Plaintiff's refusal to give her identification to the Officers 5 times; and the Officers

10

informing Plaintiff that if Plaintiff failed to give her identification, Plaintiff would be arrested for impeding an investigation leave no doubt that the Officers were investigating a suspected crime stemming from the altercation. FAC at ¶ 14; *see, also, e.g.,* Cal. Penal Code § 415 (defining as a misdemeanor the malicious and willful disturbance of another "by loud and unreasonable noise" and defining as misdemeanor the use of "offensive words in a public place which are inherently likely to provoke an immediate violent reaction); *id.* § 240 (defining assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another"); *id.* § 242 (defining battery as "any willful and unlawful use of force or violence upon the person of another").[2] Indeed, it would be unreasonable to assume otherwise, and courts "do not accept any unreasonable inferences" when deciding motions to dismiss. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

Furthermore, Plaintiff cannot plausibly argue that the Officers lacked reasonable suspicion that Plaintiff was involved in the incident between Plaintiff's husband Yousry and Giendi. Reasonable suspicion is "not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. The Officers entered the Starbucks outside of which Plaintiff had an altercation with Giendi in order to investigate suspected crime stemming from their altercation. Giendi, a participant in the altercation, identified Plaintiff to the Officers. For instance, the police report of Defendant Officer Akery notes that "Officer Garcia and I walked inside Starbucks with the victim [of the altercation, Giendi,] and [Giendi] pointed out the suspect [Plaintiff], who was sitting with another male." ECF No. 45-1 at 10. The police report of Defendant Officer Garcia states that they were investigating Plaintiff because she "called someone to respond and defend her" after her altercation with Giendi outside of Starbucks. *Id.* at 13.

The Ninth Circuit has held that even an anonymous in-person tip can justify an investigatory stop. *United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) ("The witness

---

[2] Under California law, "the least touching may constitute battery." *People v. Myers*, 61 Cal. App. 4th 328 (1998) (internal quotation marks omitted). It need not be violent or severe, and it need not cause bodily harm or even pain. *See id.*

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS WITHOUT PREJUDICE

reports received in person by the officers appear to have been credible, and provided a legitimate basis for investigating, although the officers did not write down the witnesses' names."); *United States v. Palos-Marquez*, 591 F.3d 1272, 1274-77 (9th Cir. 2010) (holding that an anonymous UPS driver's tip that a vehicle had picked up illegal aliens provided officers with enough reasonable suspicion to conduct a *Terry* stop). Here, Giendi was involved in the altercation and his identification of Plaintiff was based on his involvement in the altercation. The Ninth Circuit has found reasonable suspicion on far weaker facts. For example, *Dillard* found reasonable suspicion existed where dispatchers told a campus police officer that a man wearing the same color shirt as the plaintiff had pushed a woman near some storage containers, and the officer subsequently found the plaintiff near the storage containers. *Dillard*, 818 F.3d at 874 (citing Cal. Penal Code § 242 (battery)). Here, by contrast, Plaintiff was not only found at the location of the altercation but was also affirmatively identified by an actual participant in the altercation.

Plaintiff's first amended complaint cites to select portions of the police report for the proposition that the only reason Plaintiff was arrested was because she refused to identify herself. However, as the Court noted above, the police report contains references to Plaintiff as a suspect in a criminal investigation stemming from the altercation among Plaintiff, Yousry, and Giendi as well as the alleged assault of Giendi by Yousry.

Moreover, this case is not governed by the outcome in *Brown v. Texas* as Plaintiff once again argues. 443 U.S. 47 (1979). As this Court previously held, *Brown* does not control this case because *Brown* does not concern *Terry* stops. ECF No. 39 at 10. Furthermore, Plaintiff repeats her argument that "this case has nothing to do with *Terry* stops" and regurgitates, almost verbatim, the same arguments made in her opposition to Defendants' previous motion to dismiss. *Compare* Opp. at 6-7 *with* ECF No. 28 at 5-6. The Court was not persuaded by Plaintiff's argument that this case has nothing to do with *Terry* stops in her opposition to Defendants' previous motion to dismiss, and remains unpersuaded by the identical arguments made here. As discussed above, the first amended complaint's factual allegations show that Plaintiff was subject to a *Terry* stop when she

United States District Court
Northern District of California

1   refused to identify herself. Therefore, because the Officers detained Plaintiff after having

2   reasonable suspicion to believe that "criminal activity may be afoot," Plaintiff was therefore

3   subject to a valid *Terry* stop. *Terry*, 392 U.S. at 30.

**2. Was the Officers' Request that Plaintiff Identify Herself Reasonably Related to the Circumstances that Justified the *Terry* stop?**

*Hiibel* only allows officers to arrest suspects for refusing to identify themselves during a

*Terry* stop if "the request for identification is . . . reasonably related to the circumstances justifying

the stop." *Hiibel*, 542 U.S. at 188. Here, the Officers stopped Plaintiff because they were

investigating an altercation Plaintiff had initiated and in which Plaintiff had actively participated.

Given this backdrop, and given that Plaintiff does not dispute this point, the Court finds that the

Officers' request for identification was reasonably related to the circumstances justifying the *Terry*

stop. The Officers therefore did not violate Plaintiff's Fourth Amendment rights by arresting her

for refusing to identify herself.

Plaintiff argues, once again, that her failure to identify herself did not constitute probable

cause to arrest her for violating California Penal Code § 148(a)(1), which prohibits "willfully

resist[ing], delay[ing], or obstruct[ing] any public officer, peace officer . . . in the discharge or

attempt to discharge any duty of his or her office or employment." Plaintiff's argument here is

repeated verbatim from Plaintiff's opposition to Defendants' previous motion to dismiss. *Compare*

Opp. at 8-9 *with* ECF No. 28 at 7-9.

The Court found Plaintiff's argument unpersuasive the first time, and continues to find the

argument unpersuasive because courts have found that a person's refusal to identify him or herself

to officers supplies probable cause to arrest under § 148(a)(1). *Nakamura v. City of Hermosa

Beach*, 2009 WL 1445400, at *8 (C.D. Cal. May 20, 2009), *aff'd*, 372 F. App'x 787 (9th Cir.

2010) (describing § 148(a)(1) as analogous to Nevada statute in *Hiibel* and finding probable cause

to arrest suspect for violating § 148(a)(1) where suspect "refused to provide either his name or

identification" to police officer); *Lull v. Cty. of Sacramento*, at *4 (E.D. Cal. Mar. 1, 2018), report

and recommendation adopted in part, 2018 WL 1569433 (E.D. Cal. Mar. 30, 2018) (finding

13

probable cause to arrest suspect for violating § 148(a)(1) where suspect was detained, officer requested identification, and suspect refused to provide identification).

Plaintiff attempts to distinguish the Court's previous reliance on *Nakamura* by arguing that in *Nakamura*, "the court held that the search was incident to a lawful arrest because the officer had probable cause to arrest the plaintiff for stalking. Here, unlike in [*Nakamura*], the officers admitted that they did not arrest [Plaintiff] because she was involved in the altercation; the sole basis for the arrest was her failure to identify herself." Opp. at 10. However, the fact that the Officers did not arrest Plaintiff for the altercation does not affect the legitimacy of her arrest for resisting, delaying, or obstructing a police officer. In *Nakamura*, the court found that the defendant officer "had probable cause to arrest Plaintiff *either* for stalking *or* for resisting, obstructing, or delaying a peace officer." 2009 WL 1445400, at *9 (emphasis added). As such, *Nakamura* is not distinguishable from the instant case where Plaintiff was arrested for resisting, obstructing, or delaying an officer. Here, the Officers had reasonable suspicion to investigate Plaintiff's involvement in Plaintiff and Yousry's altercation with Giendi, and Yousry's alleged assault of Giendi. Once Plaintiff refused to identify herself, the Officers then had the probable cause to arrest her for resisting, obstructing, or delaying the investigation under Cal. Penal Code § 148(a)(1). Whether the Officers had probable cause to arrest Plaintiff for any other crimes is of no moment.

### 3. Summary

In sum, the Court finds that Plaintiff was subject to a *Terry* stop when she refused to identify herself, that the Officers' request for identification was reasonably related to the circumstances justifying the *Terry* stop because they were investigating an altercation in which Plaintiff was involved, that the Officers' arrest was therefore permissible in light of § 148(a)(1), and thus that the Officers' arrest of Plaintiff did not violate Plaintiff's Fourth Amendment rights. Defendants' motion to dismiss Plaintiff's § 1983 claim for unlawful arrest in violation of the Fourth Amendment is therefore GRANTED.

The Court's order granting Defendants' previous motion to dismiss warned that "failure to

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS
WITHOUT PREJUDICE

cure the deficiencies . . . will result in a dismissal with prejudice of the deficient claims or theories." ECF No. 39 at 20. Despite this warning, Plaintiff's first amended complaint fails to cure the previously identified deficiencies. The only substantive changes made in the first amended complaint were additions of three block quotes from the police report, which do not change the Court's opinion that the Plaintiff was subject to a lawful *Terry* stop and that the Officers' request for identification was reasonably related to the circumstances justifying the *Terry* stop. Because any amendment would be futile, and it would be unduly prejudicial to Defendants and cause undue delay to require Defendants to litigate a third motion to dismiss regarding the same deficiencies, leave to amend is DENIED. *See Leadsinger*, 512 F.3d at 532.

## B. First Amendment Unlawful Arrest Claim

Plaintiff also brings a § 1983 claim alleging that the Officers violated her First Amendment rights when they arrested her for refusing to identify herself. Essentially, Plaintiff brings the same claim as the one discussed above, but this time under the First Amendment rather than the Fourth Amendment. Specifically, the first amended complaint alleges that the Officers' arrest violated Plaintiff's "right under the First Amendment to the United States Constitution not to provide her identifying information," FAC at ¶ 59, an allegation that is identical to the one made in Plaintiff's original complaint, ECF No. 1 at ¶ 57. The Court previously rejected Plaintiff's argument, and found that even assuming *arguendo* that there was a right under the First Amendment not to identify oneself, such a right was not clearly established. Thus, the Officers were entitled to qualified immunity.

Plaintiff has failed to plead any additional facts or cite additional case law in support of her First Amendment argument. Rather, Plaintiff literally copies, verbatim, her entire argument from her opposition to Defendants' previous motion to dismiss. *Compare* Opp. at 10-13 *with* ECF No. 28 at 10-12. The only addition to Plaintiff's argument is two sentences stating that "[i]n granting the Defendants' original motion to dismiss, the Court's reasoning was premised on [Plaintiff's] arrest being a *Terry* stop. Since it was not, the Court's original reasoning is not dispositive." But

15

as the Court has discussed above, Plaintiff's arrest was premised on a valid *Terry* stop reasonably related to the circumstances justifying the stop.

Furthermore, the Court turns to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks and brackets omitted). The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mendez v. Cty. of Los Angeles*, 815 F.3d 1178, 1186 (9th Cir. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), *overruled on other grounds by Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017). "To determine whether an officer is entitled to qualified immunity, [the Court] ask[s], in the order [it] choose[s], (1) whether the alleged misconduct violated a [constitutional] right and (2) whether the right was clearly established at the time of the alleged misconduct." *Hernandez v. City of San Jose*, 897 F. 3d 1125, 1132 (9th Cir. July 27, 2018) (quoting *Maxwell v. County of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)) (alterations in *Hernandez*); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (same). Qualified immunity applies unless the answer to both questions is "yes." *See Pearson*, 555 U.S. at 232.

Here, the Court's analysis begins and ends with the clearly established inquiry. District courts within the Ninth Circuit look to United States Supreme Court and Ninth Circuit law existing at the time of the alleged act to determine whether a right was clearly established. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010). Absent binding precedent, "courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established." *Id.* The Court therefore begins its analysis with *Hiibel*.

In *Hiibel*, the U.S. Supreme Court found that "[t]he principles of *Terry* permit a State to

16

require a suspect to disclose his name in the course of a *Terry* stop." *Hiibel*, 542 U.S. at 187. Granted, the defendant in *Hiibel* challenged his arrest under the Fourth and Fifth Amendments, meaning the U.S. Supreme Court was not called to decide whether the First Amendment prohibits refusal-to-identify arrests during *Terry* stops. Nevertheless, *Hiibel*'s holding is framed in broad terms and nothing in the decision implies the First Amendment bars arrests like Plaintiff's. Indeed, adopting Plaintiff's theory would effectively nullify *Hiibel* because the arrests the U.S. Supreme Court found permissible under the Fourth and Fifth Amendment would suddenly be barred by the First Amendment. The bottom line, then, is that authority from the U.S. Supreme Court strongly suggests that the Officers did not violate Plaintiff's First Amendment rights when the Officers arrested her.

Plaintiff's First Amendment theory has fared poorly before the courts that have considered it since *Hiibel*. The Tenth Circuit faced a § 1983 suit which alleged, *inter alia*, that an officer violated the plaintiff's constitutional rights when he arrested her for refusing to answer his questions during a *Terry* stop. *Koch v. City of Del City*, 660 F.3d 1228, 1238-46 (10th Cir. 2011). The Tenth Circuit "[f]ound no authority recognizing a First Amendment right to refuse to answer questions during a *Terry* stop." *Id.* at 1244. In fact, the opposite was true. *Koch* noted that "several courts have declined to recognize a First Amendment right not to speak in analogous contexts." *Id.* (citing *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 949 (M.D.N.C. 2011); *Garcia v. Jaramillo*, 2006 WL 4079681, at *16 (D.N.M. Nov. 27, 2006)). The Tenth Circuit therefore found that "it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop." *Id.*

Underscoring the point, a district court recently found that the law on this issue was not clearly established on materially indistinguishable facts. *McGuigan v. Cty. of San Bernardino*, 2016 WL 6603955 (C.D. Cal. Mar. 25, 2016), *rev'd and remanded on other grounds*, 698 F. App'x 919 (9th Cir. 2017). In *McGuigan*, an officer arrested the plaintiff under California Penal Code § 148 because the plaintiff refused to identify himself. The plaintiff subsequently brought a

United States District Court
Northern District of California

§ 1983 action which alleged, *inter alia*, that the arrest was unconstitutional. *Id.* at *1. After examining *Hiibel* and Ninth Circuit case law, the district court found that "the law is not clearly established in the Ninth Circuit as to whether an officer may use Section 148 to arrest a person for refusing to identify himself during a lawful *Terry* stop." *Id.* at *6. *McGuigan*'s analysis centered on the Fourth Amendment instead of the First Amendment. Even so, the district court's conclusion lends further support to the view that the law in this area is not clearly established.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. Here, the relevant case law either suggests that the First Amendment allows refusal-to-identify arrests during *Terry* stops or concludes that the right is not clearly established. The Court therefore finds that Plaintiff's First Amendment right to refuse to identify herself during a *Terry* stop, assuming *arguendo* that it exists, was not clearly established. In turn, the Officers are entitled to qualified immunity as to Plaintiff's First Amendment claim for unlawful arrest.

Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 claim for unlawful arrest in violation of the First Amendment against the Officers is GRANTED. The Court's order granting Defendants' previous motion to dismiss warned that "failure to cure the deficiencies . . . will result in a dismissal with prejudice of the deficient claims or theories." ECF No. 39 at 20. Despite this warning, Plaintiff's first amended complaint fails to cure the identified deficiencies. The Plaintiff has neither made substantive changes to her complaint nor brought any new arguments in support of this claim. Because any amendment would be futile, and it would be unduly prejudicial to Defendants and cause undue delay to require Defendants to litigate a third motion to dismiss regarding the same deficiencies, leave to amend is DENIED. *See Leadsinger*, 512 F.3d at 532.

### C. Fourth Amendment Excessive Force Claim

Plaintiff's final federal cause of action is also brought under § 1983 and alleges that the Officers violated Plaintiff's Fourth Amendment rights by using excessive force when arresting

United States District Court
Northern District of California

her. FAC at ¶¶ 14, 22, 30-33. Specifically, Plaintiff alleges that "officer defendants Garcia and Akery dragged her off of her seat and handcuffed her," *id.* at ¶ 14, an allegation that is identical to the one made in Plaintiff's original complaint, ECF No. 1 at ¶ 15. Plaintiff has not pleaded any new facts with respect to her excessive force claim. Once again, Plaintiff literally copies, verbatim, her entire argument from her opposition to Defendants' previous motion to dismiss. *Compare* Opp. at 14 *with* ECF No. 28 at 14. The only addition is a brief argument that the Court previously erred in finding that Plaintiff did not allege she was injured as a result of the alleged excessive force, Opp. at 14, because Plaintiff's complaint contains an allegation that Plaintiff suffered "physical injuries," FAC at ¶ 22.

However, the Ninth Circuit has rejected excessive force claims based on more aggressive conduct than that at issue here. In *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001), a 60-year-old woman refused to provide an officer with her identification upon request. The officer grabbed the woman's arm and applied physical force to handcuff her. The Ninth Circuit found this use of force was reasonable. *Id.*; *see Bennett v. Gow*, 345 F. App'x 286, 287 (9th Cir. 2009) (finding officer's use of force reasonable where suspect, who took another person's driver's license, refused to give it to the officer; the suspect tried to walk away; and the officer shoved the suspect to the ground and handcuffed him); *McInerney v. City & Cty. of San Francisco*, 466 F. App'x 571, 573 (9th Cir. 2012) (finding use of force reasonable where officers handcuffed trespassing suspect, handcuffs were uncomfortable, and an officer grabbed suspect's arm while leading suspect to police van); *Belcher-Bey v. City of Las Vegas*, 2015 WL 1344790, at *1 (D. Nev. Mar. 20, 2015) (rejecting excessive force claim where officer allegedly grabbed suspect's hand, twisted her wrist, and pulled her arm while demanding suspect exit vehicle during a traffic stop based on invalid license plates).

Moreover, it is true that "overly tight handcuffing can constitute excessive force." *Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1090 (N.D. Cal. 2017) (quoting *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004)). However, in the instant case, Plaintiff's first amended

complaint "contains no allegations that the handcuffs were too tight, that the handcuffs hurt or damaged [Plaintiff's] wrists, or even that they caused any other injury." *Malek v. Green*, 2017 WL 4284117, at *17 (N.D. Cal. Sept. 27, 2017). Thus, the gravamen of Plaintiff's excessive force claim is that it was unconstitutional for the Officers to remove Plaintiff from her chair and handcuff Plaintiff while arresting Plaintiff. Plaintiff cites no authority that adopts this view, and there is case law to the contrary. *Dillman v. Tuolumne Cty.*, 2013 WL 1907379, at *7 (E.D. Cal. May 7, 2013) ("The mere application of handcuffs during the course of an arrest does not, in and of itself, give rise to a section 1983 claim for excessive force."); *Davis v. Cty. of Los Angeles*, 2016 WL 10647191, at *9 (C.D. Cal. Mar. 9, 2016), report and recommendation adopted, 2016 WL 10646330 (C.D. Cal. Apr. 4, 2016) (same).

Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 Fourth Amendment excessive force claim against the Officers is GRANTED. The Court's order granting Defendants' previous motion to dismiss warned that "failure to cure the deficiencies . . . will result in a dismissal with prejudice of the deficient claims or theories." ECF No. 39 at 20. Despite this warning, Plaintiff's first amended complaint fails to cure the identified deficiencies. Because any amendment would be futile, and it would be unduly prejudicial to Defendants and cause undue delay to require Defendants to litigate a third motion to dismiss regarding the same deficiencies, leave to amend is DENIED. *See Leadsinger*, 512 F.3d at 532.

### D. State Law Causes of Action

Plaintiff's remaining claims are based on state law. Specifically, Plaintiff brings causes of action against all the Defendants—the Officers, the City of San Jose, and the San Jose Police Department—for violation of California Civil Code § 52.1 (Count 1), assault (Count 4), battery (Count 5), intentional infliction of emotional distress (Count 6), negligent infliction of emotional distress (Count 7), negligence (Count 8), and false imprisonment (Count 9).

A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the

20

same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Conversely, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937-38 (9th Cir. 2003) (as amended) (holding that § 1367(c) grants federal courts the discretion to dismiss state law claims when all federal claims have been dismissed). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations and internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, Plaintiff has failed to plead a viable federal cause of action. The factors of economy, convenience, fairness, and comity support dismissal of Plaintiff's remaining state law claims. This case is still at the pleading stage, and little discovery has taken place. ECF No. 49 at 2. Federal judicial resources are conserved by dismissing the state law claims at this stage. Moreover, the Court finds that dismissal promotes comity as it enables California courts to interpret questions of state law. Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court DISMISSES Plaintiff's state law claims without prejudice to refiling in state court.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss as to Plaintiff's federal claims with prejudice, and DISMISSES Plaintiff's state law claims without prejudice. Plaintiff may refile her state law claims in state court.

**IT IS SO ORDERED.**

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS WITHOUT PREJUDICE

Dated: February 12, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 17-CV-07323-LHK
ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE AND STATE CLAIMS
WITHOUT PREJUDICE

United States District Court
Northern District of California